The Law Office of
James M. Branden
551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495

October 24, 2017

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

             Re:   United States v. Julio Alvarez
                   Docket No. 16-CR-395 (VEC)

Dear Judge Caproni:

     Along with Joseph V. Sorrentino, I represent Mr. Alvarez in
the above-referenced matter.  On June 9, 2017, Mr. Alvarez pleaded
guilty to the Indictment, charging him with bank and wire fraud and
a conspiracy to commit such frauds (counts two, three and one,
respectively).  This letter is submitted in support of a sentence
that would include a significant downward variance.

## STATEMENT OF THE CASE

### Mr. Alvarez's Personal and Work History

     Mr. Alvarez was born in the Dominican Republic in 1968.  In
1969, his parents immigrated to the United States.  Mr. Alvarez was
left behind and raised by his maternal grandmother.  He attended
local schools in the Dominican Republic and spent one year of high
school at the Dominico-Americano, where he learned to speak
English.

     During the high school terms, Mr. Alvarez was employed part-
time as a housekeeper and as a driver for a local bakery.  During
the summers, he visited his parents in New York.

     Mr. Alvarez graduated from high school in 1983.  Thereafter,
while maintaining his part-time work, he attended two years of
college, majoring in civil engineering.  He transferred to a
technical institute with a focus on computer science.  In 1987,

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 2

while driving for the bakery, Mr. Alvarez met Augustina Rodriguez, who lived in a neighboring town. That same year, they had their first child, Astor. Because the Dominican economy was insalubrious for young professionals at the time, and because the newborn intensified the need for greater income, Mr. Alvarez abandoned his education in 1988. The following year, he and Augustina married, had a second child, and moved to New York.

Mr. Alvarez found employment in New Jersey at Skyline Auto Auctions, where he earned $5 an hour as a driver and car washer. In 1991, he became a livery taxi driver, first with Cabrini Car Service, then Haven Car Service and finally, High Class Car Service. In 1998, he obtained his insurance license and, in 1999, supplemented his income by opening a property and casualty insurance brokerage known as 195 Brokerage and Travel Agency (195 had been his livery taxi unit number).

The insurance company was successful and Mr. Alvarez earned slightly more than $100,000 his first year out. He stopped driving in 2000 and focused on the burgeoning insurance company. In 2001, his business nearly doubled and Mr. Alvarez worked constantly. In late 2001, however, as a collateral consequence of "9/11," insurance companies, including Mr. Alvarez's, tanked. In 2002 or 2003, in an effort to revive the business, Mr. Alvarez convinced others to join him in a partnership to purchase Premium Radio Dispatch (Premium), with a driving staff of at least 125, who, he had hoped, would be loyal to his insurance services. Over time, he acquired something of a small empire, including seven livery cab companies, leasing companies, two gas stations (since sold), and a medical transport service similar to Access-a-Ride. Mr. Alvarez's wife and two older children (now in their 20s) work for his companies. His 14 year old daughter is in high school in Fort Lee, New Jersey.

As to Premium, it was part of his business model to purchase used Hertz rental cars and lease them to livery cab drivers.

Prior to 2012, Mr. Alvarez operated his businesses legitimately. He has no prior criminal history.

<u>The Instant Offense</u>

The facts as set forth in the Complaint (16 Mag 1547) and reprinted in the presentence report (PSR, at 5-11, ¶¶23-62)) are

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 3

largely correct.    Mr. Alvarez, however, offers, by paragraph reference, some finer points and explanation.

¶23  The straw buyers did not relinquish all interest in the vehicles.  It was expected that the bank loans would be paid off roughly in two years and the vehicles would be driven for five years thereafter.  A good portion of the income from drivers/lessees would pass to the straw buyer.

¶34  As noted here, profits were not expected until the loans were satisfied.  There was no intended loss.

¶36  This paragraph is accurate.  It should be emphasized, however, that CW-1 (Taveras) acted on his own in these regards.  Mr. Alvarez had no connection to Dealership-1 and was not consulted on whether or how to approach CW-2.  Moreover, CW-2 should be seen as a principal malfeasant.  He spoon-fed the fraud and Dealership-1's assent thereto.  Further, Taveras and Ramos were known to each other long before their introduction to Mr. Alvarez    through a mutual friend.

¶37  At its inception, the plan was small.    Ramos would purchase a limited group of cars (based on his good credit) and all three expected to share equally in proceeds from the vehicles he alone would purchase.  The Dealership was complicit and the lenders would be paid off before profits for Mr. Alvarez and the others were disbursed.

¶38  As noted, Ramos was made CEO of Entity-1.    This Court previously sentenced Ramos to a term of probation.

¶39  As can be gleaned here, Mr. Alvarez provided the know-how and sweat equity.  He managed all parts of the business following the purchase of the vehicles, which was enabled through Taveras's dealership contacts (for which Taveras also received "bird dog" referral fees (PSR at 10, ¶56)) and Ramos's credit.

¶¶40-42

Taveras and Ramos made the first vehicle purchases.  Mr.

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 4

> Alvarez was not made aware of the particulars of the purchases, including the specific loan-application falsities.

¶43 Expanding the business to include other buyers was Taveras's idea, not Mr. Alvarez's. Taveras pumped Mr. Alvarez for names.

### Mr. Alvarez's Statement Re: The Offense

¶¶69-70

> Mr. Alvarez made a full factual statement in support of his guilty plea. In his interview with the Probation Office, he added that, at first, he did not believe his agreement with Taveras and Ramos was illegal as he knew many others in the taxi community using "private" vehicles for hire (PSR at 11, ¶69). Six months into the agreement, however, he learned through Taveras that a lawyer for Dealership-1 put a stop to their *modus operandi*. Mr. Alvarez had explicit reason to know then that the lies accompanying the loan applications were material (see PSR at 9, ¶49), but the harm seemed impossible to undo or stem given that many cars had already been leased and constituted the livelihood of the drivers. Further, it should be noted that Mr. Alvarez lost money in this endeavor. Vehicles were not leased, generally, until they were TLC or road-certified, which sometimes took months, and even once leased, many drivers defaulted on lease payments. This downside of the business was exacerbated by the fact that so many vehicles were purchased in a very short period of time and Mr. Alvarez lacked considerable start-up capital. He took out personal loans in an effort to make good on the purchase loans but he could not keep up. Most of the vehicles were repossessed and sold.

¶¶96, 98, 112

> In keeping with the prior paragraph, the Probation Office properly noted that Mr. Alvarez has "liquidated" his assets in an effort to "rectify his mistakes." In doing so, he lost the family home. The family is in the process of moving to far-lesser accommodations.

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 5

> Bankruptcy, and its consequences, would seem a likely possibility. Financial ruin has taken a significant toll on Mr. Alvarez, who, through Pretrial Services, is receiving mental health treatment, and Augustina, who is socially withdrawn and clinically depressed.

## The Attached Letters of Support

Despite this being a fraud case, most of the letters attached hereto come from business associates and community and religious leaders extolling Mr. Alvarez's honesty, grit, reliability and fair consideration of others. At bottom, they suggest that Mr. Alvarez is an exceedingly good man who, here, has exhibited a singular lapse in good judgment.

Also attached are letters from Mr. Alvarez's wife and daughter.

**ARGUMENT**

THE COURT SHOULD IMPOSE A SENTENCE TO INCLUDE A SIGNIFICANT DOWNWARD VARIANCE

## The Sentencing Factors

Under 18 U.S.C. §3553(a)(2), the Court "shall impose a sentence sufficient, but not greater than necessary" to comply with generally recognized purposes of sentencing, including the need:

A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

B)   to afford adequate deterrence to criminal conduct;

C)   to protect the public from further crimes of the defendant; and

D)   to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 6

Sentencing courts are also advised to consider, among other things:
the nature and circumstances of the offense, the history and
characteristics of the defendant and the applicable sentencing
range as established by the now-advisory sentencing guidelines. 18
U.S.C. §3553(a)(1) and (4).

### The Guidelines

Mr. Alvarez does not object to the sentencing guidelines
calculation set forth in the presentence report, as modified by the
government's new (as of today) assessment that loss is $1,236,000
and gross receipts from financial institutions did not exceed
$1,000,000, resulting in a total offense level (TOL) of 25 (PSR at
12-13, ¶¶73-84).[1] He notes, however, that the range of
imprisonment associated therewith is significantly in excess of the
mean and median sentences imposed on fraud offenders in criminal
history category (CHC) I. As provided by the U.S. Sentencing
Commission's Interactive Sourcebook of Federal Sentencing
Statistics for Fiscal Year 2016, the mean and median terms of
imprisonment imposed on first offenders were 31 and 24 months,
respectively.

This may stem from the fact that, especially in "high loss"
cases such as this, courts have found fault with the guidelines.
See United States v. Corsey, ___ F.3d ___, 2013 WL 3796393 (2d
Cir.) (Judge Underhill, concurring, noting "the widespread
perception that the loss guideline is broken"); United States v.
Adelson, 441 F.Supp.2d 506 (S.D.N.Y. 2006) (noting especially in
high-loss cases that the fraud guideline results in a "piling on
of points" and citing criticism that the Sentencing Commission "has
never explained the rationale underlying any of its identified
specific offense characteristics [in the fraud guideline], why it
has elected to identify certain characteristics and not others, or
the weights it has chosen to assign to each identified
characteristic"). See, also, United States v. Adelson, 301
Fed.Appx. 93 (2d Cir. 2008); (Circuit affirmed variance from
guidelines range of life imprisonment to 42 months). United States
v. Parris, 573 F.Supp.2d 744 (E.D.N.Y. 2008) (comprehensive
decision deriding the fraud Guidelines and imposing a variance
from 360 months to 60 for two defendants also convicted of

---

[1]

Specifically, paragraph 74 should reflect the new loss and an
enhancement of +14 and paragraph 76 should be deleted.

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 7

obstruction).

The Court would not be alone thus in taking a skeptical view
of the harsh guidelines range applicable here.

### The Nature and Circumstances of the Offense

The Court will note that most of the TOL here derived from an
"actual" loss estimate of $1.23 million, which is to be contrasted
with the intended loss, which was zero. An intended loss of zero
is a rare and powerful mitigating circumstance. In addition, fault
lies equally with the dealerships that cater to the taxi/livery
community, that set this and similar frauds in motion. Only upon
the dealership's suggestion did Mr. Alvarez condone the
misstatements on the applications.

As such, the true, mitigating nature and circumstances of the
offenses are not fairly captured by the guidelines and a downward
variance should be imposed.

### The History and Characteristics of the Defendant

Mr. Alvarez has an impeccable history, calling to mind the
"American Dream." He and his wife and two young children came to
this Country in the late 80s and despite the fact that Mr. Alvarez
was relatively well educated in his homeland, he was only able to
find work in the yard of an auto auction at $5 an hour. But, he
appreciated the job and worked hard. Two years later, he became a
livery taxi driver (195), earning $20,000 per year. He thrived in
this capacity, as well, but an entrepreneurial spirit was untapped.
When not on the road, he attended class and eventually earned his
insurance license. In 1999, he was proud to open his own shop, 195
Brokerage and Travel Agency. The agency was almost instantly
successful and Mr. Alvarez was suddenly earning six figures. He
worked constantly. When the market crashed in 2001, Mr. Alvarez
refused to be defeated. He sold an idea to purchase a dispatch
livery service, Premium, to partners. The fleet of drivers then
purchased insurance through Mr. Alvarez. Premium, too, was almost
instantly successful and over time, Mr. Alvarez became a
significant figure in the NYC taxi/livery business community, with
several dispatch companies, a medical transport service, leasing
companies, and gas stations. Though he worked incessantly, his
businesses employed his wife and older children and in this way the
family remained tight and supportive.

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 8


     Further, as set forth in the attached letters, Mr. Alvarez was
generous and garnered the respect and admiration of his peers.  For
example, Jorge Herrara found the heart of it in describing Mr.
Alvarez simply as "honest, reliable and considerate of others
(financial or personal)" with a "selfless vision." Rafael Serrano,
a Minister and President of 7 Ways Transportation, lauded Mr.
Alvarez's "willingness to teach others to succeed in the community
with honesty and hard work." Similarly, Miguel Nicolas Amadis, a
PhD, and Senior Pastor at Hosanna Al Rey, observed that Mr. Alvarez
"gives back not only financially but also by encouraging,
empowering those around him to succeed and grow despite any
obstacles." Juan Castillo noted that, through his transportation
companies, Mr. Alvarez has "created hundreds of jobs for immigrant
and low-income community members, literally helping hundreds of
families put food on their tables."

     William Carter, now retired, was, among other things,
Executive Director of Licensing for the New York City Taxi
Commission. In his oversight capacity, he "invariably valued" Mr.
Alvarez's "input and greatly respected his professionalism."
Later, as an industry consultant, Mr. Carter valued Mr. Alvarez as
one of his "best" clients. He was "accurate and professional" and
"honest and trustworthy." Mr. Carter concluded: "[Mr. Alvarez] is
and always has been a gentleman and I would recommend that he be
viewed as a good, and reliable human being, a man of high
character, a good father and a good person."

     The fraud in this case is tragic.  It is not an overstatement
to say that Mr. Alvarez has lost "everything." He lost his home
and all other material worth – indeed, he is heavily in debt, and
the subject of a number of law suits – and, at least for a bit, he
may lose his freedom.  But even more difficult for him is the
present inability to provide for his family.  And, most difficult
is the intangible loss of his good name and reputation.  Despite a
lifetime of hard work, grit and determination, at nearly 50 years
old, Mr. Alvarez has nothing.

     If his history predicts, however, Mr. Alvarez will somehow
gather himself and become a productive citizen again.  In some
ways, he has already begun the process.  He has accepted full
responsibility in this case and he has confronted the emotional
fall-out by availing himself, through Pretrial Services, of mental
health treatment.  His rehabilitation will be aided by an innate
intelligence, a keen business sense, and a proven drive to succeed.

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 9

Further, he is unburdened by drug or alcohol addiction and has a
loving and supportive family.

#### The Parsimony Clause

With a guidelines sentence, Mr. Alvarez will be released from
prison, penniless, and a felon, closing in on 60 years old and
retirement age. Such a term would likely undercut any real chance
that he could once again become a productive citizen. Indeed, such
a term would more likely result in unemployment or low income with
no opportunity to build, and the need for social services and
subsidies.

A probationary term, or a short term of imprisonment, at
worst, will better serve Mr. Alvarez and society, while still
reflecting the seriousness of the offense and respect for the law.
See 18 U.S.C. §3553(a)(2)(A). In this regard, while the offense
was indeed serious, it was not without mitigating circumstances,
including the dealership's initiation of it and a zero intended
loss. Further, general deterrence will be promoted largely through
collateral consequences. Id. at (a)(2)(B). The fraud in this case
was financially ruinous for Mr. Alvarez. A cautionary tale if ever
there was one, the public would be well advised not to follow Mr.
Alvarez's lead in this regard even were it to result in no prison
term.[2] Last, there is no reason to believe Mr. Alvarez will re-
offend and a significant prison term to curb recidivism is
unnecessary.

Under all of the circumstances, a term of probation or a
prison term of no more than a year and a day would be "sufficient,
but not greater than necessary" under the Parsimony Clause.

---

[2]

It merits noting that defendant Ramos was sentenced to a term
of probation despite the "seriousness of the offense" and the need
for general "deterrence." Mr. Alvarez understands that there may
have been some other circumstances at play at Ramos's sentence, but
Ramos was a key figure in the fraud with full knowledge of the
falsities he submitted in support of the first loan applications,
and, in general, the Court should seek to "avoid unwarranted
sentence disparities among defendants with similar records who have
been found guilty of similar conduct." 18 U.S.C. §3553(a)(6).

Hon. Valerie E. Caproni
United States District Judge
October 24, 2017
Page 10

**CONCLUSION**

For the forgoing reasons, Mr. Alvarez should be sentenced to a probationary term or, should imprisonment be deemed necessary, no more than a year and a day.

Respectfully submitted,

James M. Branden
Joseph V. Sorrentino
Attorneys for Mr. Alvarez

Encs.

July 15, 2017

Honorable Judge Caproni
United States Magistrate Judge
Southern Direct of New York
Regarding: U.S. v. Julio Alvarez


Dear Judge Caproni,

I have known Julio as a personal friend for over 10 years. I am writing this character reference
letter to express my support for him regarding the legal implications he is facing. When Julio first
inform me of his arrest I was immediately taken back.  As he explained the criminal charges
against him, I remained in disbelief as it didn't quite fit the deliberate actions of the businessman
and friend I know him to be.

If I were to pick three words to describe Julio's demeanor, it would be honest, reliable and
considerate of others well being (financial or personal). These are traits that in my experience are
not very abundant in the world we live in today, let alone in business people. This is one of the
many reasons I hold him as a valued and close friend. To cite a few examples, if Julio were to be
find out of me feeling under the weather, he would prepare his homemade chicken soup and
show up at my front door to check up on me. He would also proudly bring he some of his
homemade concoctions (desserts) that we would share over a good conversation.

Although I don't know the intricacies of Julio's businesses and partnerships with great detail, one
thing almost always stood out in his shoptalk and that was his selfless vision of how he aspired to
create opportunities for others to grow and profit, even before himself.

While I've always known Julio to only have the best intentions, I understand that in business, as in
life, even our best intentions can be flawed. In conclusion, drawing from my lengthy relationship
with Julio he has demonstrated honesty, fairness and a true humanitarian; which is why I believe
Julio to be a genuinely good person.

Your honor I stand available for any further insight you may require on my relationship with Julio
and would like to thank you for taking these words into your consideration as you deliberate on a
proper sentence.


Sincerely,


Jorge Herrera

7/21/2017

To whom it may concern,

This letter is intended to describe part of the life of Mr. Julio    , a gentleman, a husband, a father, a friend, a community person, and an entrepreneur that we had known in the Dominican community.

I feel honored and blessed with his friendship. I had experienced and received his wise advises about life and business. He had helped me to learn about the importance of the regulations, and the management with the employees in this kind of business.

I had seen his willingness to teach others to succeed in the community with honesty and hard work. He can be in an office managing, but he can go out to drive a car if a driver is needed, in order to give a great service to his clients.

As a man of faith in God he is an inspiration talking and practicing about the respect, and service to others individuals. I would feel pleased to see him to continue to work hard in our community serving individuals and being a mentor to new entrepreneurs.

Rafael D. Serrano

Ordained minister from

Manantial De Vida Church.

President of 7 Ways transportation

SHARAD M. DESAI
Notary Public, State of New York
No. 01DE4929582
Qualified in Suffolk County
Commission Expires 06/03/2018



# HOSANNA AL REY
## CENTRO DE INTERCESION MUNDIAL

July23,2016

To Whom It May Concern,

We greet you in the name of our Lord Jesus Christ.
The purpose of this letter is to offer our highest of recommendations and regards for your consideration of our dear brother in Christ and friend Julio Alvarez.

Julio has been a personal friend and community leader for over 20years.
Professionally, we know him to be a human being of great courage, dedication and patience.
In our community and to our congregation he has always been known a great pillar of inspiration. As a successful businessman and outstanding citizen, his exemplary success and humility are nothing less than a visual representation of the American dream.

As a dear friend of our congregation and community, Mr. Alvarez's relationship with us has been a wonderful one in which we can also attest for his incredible kind caring spirit, honorable character and incredible commitment to all that he does. He is a person that gives back not only financially but also by encouraging, empowering those around him to succeed and grow despite any obstacles.

We are excited to support Julio and could not speak any more highly of Julio's integrity and hope our words may be considered in this particular matter.

Please feel free to contact me personally in case you may have any further questions. I may be reached at ███████████

In His Service,

Dr. Miguel Nicolás Amadis, PhD
Senior Pastor
pastoramadis@hotmail.com

1653 St. Nicholas Avenue (193rd St.) New York, NY 10040

Juan Castillo

June 16, 2017

Dear Sir or Madam:

Please allow me to confirm that for about ten years my experience working for/ collaborating with Mr. Julio Alvarez has been a very favorable one. I have developed a number of creative/ media projects with Mr. Alvarez over the years, in which he has demonstrated a professionalism and respect for the work that is very difficult to find. He has been willing to put his money and reputation at risk to support projects like ours. Through his transportation companies, he has created hundreds of jobs for immigrant and low-income community members, literally helping hundreds of families put food on their tables. I've witnessed this personally. I've also been grateful for Mr. Alvarez's support in my creative work as I completed my graduate thesis in media production. He was a key supporter of a media project I developed that trained and employed over sixty people from very different backgrounds in age, ethnicity and literacy, including a number of single mothers.

I have only known Mr. Alvarez to be a hard-working family man who has uplifted his family and those around him by his own hard work, emerging from very humble beginnings in the Dominican Republic, then as a New York immigrant cab driver humbly known for his cab driver unit number "195." He has made a very important positive impact on our community, always with an open door to anyone seeking an opportunity and willing to work----I know this first hand. More important, he has singlehandedly created a company that from its beginnings has provided important services in underserved communities providing affordable transportation that has increasingly had a positive impact on public health. By providing affordable medical transportation in areas such as the Bronx and uptown Manhattan, he's no longer just a nice guy. The services his company provides in affordable health transportation have measurable outcomes, as thousands of elderly and sick New Yorkers rely on his company's essential services on a regular basis. Please note: since Mr. Alvarez has created this company single handedly and continues to be the driving force of the company's operation, his absence would probably lead to the failure of his company and would undoubtedly have a significant negative impact on our communities. I hope you can extend your investigation to this very important aspect and social impact of Mr. Alvarez' business, which has only continued to serve more and more vulnerable residents since his beginnings.

I urge you to please give him every consideration, not only because I and my friends and relatives respect him very much personally, but also because in my knowledge of his labors and endeavors, I believe our neighborhoods would be better off with more community-minded, generous entrepreneurs like him and would stand to lose a great deal in his absence. If I can provide anything else to assure you Mr. Alvarez is in fact a very important asset in our community, please call at your earliest convenience:

Respectfully,

Juan Castillo

July 25, 2017

To whom it may concern:

My name is William Carter. I am 69 years old and a retiree from New York City. I currently live in Palm Coast, Florida.

I worked for 17 years, in the New York City Police Department as Office Manager for the Commissioner of Management and Budget and as a project manager for the Office of Emergency Management. I also worked for 18 years in the New York City Taxi Commissioner as the Executive Director of Licensing.

In that capacity I had the pleasure of meeting Mr. Julio Alvarez. At the time, while I was at that oversight agency, Mr. Alvarez was the President of several corporations that were licensed by the NYC TLC to provide for hire service in and around NYC.

I had occasion to meet with Mr. Alvarez many times regarding his operations and the industry on a whole.  My staff and I invariably valued his input and greatly respected his professionalism.

Upon my retirement I became an Industry consultant.  In this capacity I help many car services, medallion licensees, ambulette operators, limousine companies etc. complete their licensing process and maintain good business practices.

Mr. Alvarez and his car services had become some of my best clients. I always found them to be both accurate and professional. In my many interactions with Mr. Alvarez he has been pleasant, amiable, honest and trustworthy. I found it a pleasure to interact with him and his staff.

On a personal note, I have had the pleasure to have met Julio's wife and sons. They have always been an accommodating family and they have always stood steadfast behind their father. Julio is and always has been a gentleman and I would recommend that he be viewed as a good, and reliable human being; a man of high character, a good father and a good person.

William Carter

Former Director of Licensing, NYCTLC

Board Member of the Limousine Association of NY

Julio 24,2017

To Whom It May Concern:

This is to certify that my name is Jaime Vargas, who resides at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

That I am of Legal Age and whose Identification number is ▮▮▮▮▮▮. That I am, an Insurance Broker.

That I know Mr. Julio Alvarez ,as an Insurance Broker and as a Community Leader in the Washington

Heights area. I know Mr. Alvarez for the last 20 years. He is an aggressive businessman who is always

looking for solutions to community issues. Mr. Alvarez is also involved in Political Activities looking to

help Candidates of the Dominican Republic, and New York Candidates, so he is always in the Newspaper

and in Public activities

during Dominican Republic campaign.

That Julio Alvarez as far as I know is a good person, prosperous businessman, he is a family person, to all

activities he was always with his family.

Should you need any further information, please do not hesitate to call me at ▮▮▮▮▮▮ or write to

the above address.

Thank you

Jaime Vargas

State of New York
County of New York
Sworn on 07/25/2017

STEVEN H. RODRIGUEZ
NOTARY PUBLIC, STATE OF NEW YORK
REGISTRATION #01RO6268396
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 09.10.2020

# Carlos M. Ovalle, D.D.S. P.C.
### Dentist
201 Wadsworth Ave. Suite GD2 • New York, NY 10033
Tel.: (212) 927-1721 • Fax: (212) 781-9600

July 21, 2017

To Whom It May Concern:

It is my pleasure to recommend Mr. Alvarez M. Julio, I have known Mr. Alvarez for 10 years. In the time that I have known Mr. Alvarez I have come to see that he is tirelessly hard working, very responsible and friendly person

I can assure that during the time I interact with Mr. Alvarez he was a highly respectful, honest, and courteous and I had always found him to be of good moral character.

If I can be of any further assistance, or provide you with any further information, please do not hesitate to contact me.

Yours Sincerely,

Carlos M Ovalle D.D.S

Francisco A. Lara

████████████████████
██████████

July 17, 2017

## To Whom It May Concern

The Julio I know, is a character of unsurpassed nobility, unmatched help others oriented drive, unrestrained community loyalty, Davinci's ingenuity on opportunity for others, unchallenged willingness to work hands-on demand, Mother Theresa's-like compassion, Imp ressive care giving capabilities, Unable to eat without sharing it all if necessary, Family First Oriented Provider, Love giving outstanding presence, the one who wants to solve every single soul from suffering, faithful to all faithful friends, a believer of God, a visionary, a politian who believes in the poor with opportunities and the believer and follower of the wealthy good examples, the successful businessman who put his own business money for the common good and cause and even his own family time at risk again, for the greatest good. A great thinker with untrained or poorly so, admirative skill and a easy victim of too much out-put forward with too little planning which is a recipe for disaster, Which I mention in 2005 when I met this modern Davinci as a Business Consultant then. His good intention are unquestionable when you interact with this gentleman, neither his love and compassion. His survive where many fail and I truly believe that it is in his im pulse and willingness to Help that God himself must have put this Angel to work for and with us all. God Bless this soul and help us help him correct his mistakes as we humans, all make. I hope for the best, and I support Justice wherever personal Ethics has failed.

Now this gentleman: Julio Alvarez is a good Man and if justice has any doubt or reservation I vouch that it should be used to help in his favor whenever and wherever possible for we have very few great souls like the one standing here today. May God let it be so!

Much Love,

# Francisco A. Lara

Edith Liriano

July 29, 2017

Dear Judge Caproni,

Please accept this letter in support of Mr. Julio Alvarez. I have known Julio since about 2003 and have done business with him over the course of many years since. I have always known him to be a hard worker, honest, honorable and fair.

In 2013 I needed a car in which to continue my work as a taxi driver and approached Julio. He sold me the 2013 Honda Accord I am driving to this day to make a living. As with all my experiences working within Julio's car service bases before, my purchase of this car turned out to be a success, as it has enabled me to keep working and to support my family. My wife, our two sons and I have benefited greatly from Julio's support and trust over the years. It is hard for us to believe his honesty is being questioned.

Julio has demonstrated to be an honorable and trustworthy businessman. He is also an exemplary father and a good person. Anyone I know who has had any dealings with him would say favorable things about him. He has given many people the opportunity to work and support their families. He is a truly beautiful person, always supportive, positive. I know I can count on him anytime I might call for his help in any matter.

If there is anything else I can provide to confirm my respect and gratitude for Julio's honesty and decency as a businessman and human being, please contact me. Thank you for your consideration.

Sincerely,

Edith Liriano

Carlos Pena

███████████
███████████
███████████████

July 29, 2017

Dear Judge Caproni,

I have known Julio Alvarez personally since the year 2000. He had always had a good reputation as a responsible businessman in the community. I've done business with him for many years and have never had any reason to complain about him. To this day, I consider him a decent person and a friend.

Sincerely,

Carlos Pena

Henry J. Gomez

██████████████████

██████████████████

July 29, 2017

Dear Judge Caproni,

It is with my deepest respect that I write you in support of Julio Alvarez. My experience doing business with him since 2012 has been a pleasure and an honor, as he has only offered and delivered good opportunities to me. My most recent deal with Julio involved a 2013 Honda Accord, which was one of the cars regarding which he is being questioned in this case. When I heard Julio was being accused of bad dealings in this project I was surprised because from the outset, he only provided me an affordable opportunity to engage in my occupation as a cab driver using this car. Initially I approached Julio asking if he could help me obtain a car with which to work. At that time he did not have any vehicles available, but offered to look into helping me get access to a car. When I approached Julio, other dealerships had already denied my application for a similar car due to my limited credit. So, of course, I was extremely grateful and hopeful when he said he would help me find a solution. When I found out he could help me obtain a new car, my wife, myself and our five young daughters were very grateful and very happy as you can imagine, as this would mean I could work on getting a steady income in a reliable car.

After more than a year of working in this car, my father had a serious medical emergency in the Dominican Republic, which forced me to relocate my family to the Dominican Republic for almost a year, which meant I could not keep up with this car's payments. I will be eternally grateful for the generosity Julio demonstrated at the time. I asked Julio if I could return the car without claiming any of the thousands of dollars I had already paid for this car over the course of the previous year of my using it. It came as a complete shock when Julio responded by offering to return my down payment of $2,000. To this day, my friends and I can't believe he was so generous in my case, as any other dealership would have sued me to finish paying off the car in its full value. No other dealership would have done this for me. It is because of this great generosity on Julio's part that I have to write this letter and I sincerely hope you will please take this into consideration. Other persons I know who have done business with Julio would say the same in their cases.

If there is anything else I can provide to confirm that I have only my most profound gratitude for Julio's business dealings with me, please call me. I would be more than happy to speak in person in support of Julio, who has demonstrated to be more than a friend. Thank you very much for your consideration.

Sincerely,

Henry J. Gomez

To:

Valerie E. Caproni
Honorary Judge
United States Federal Court


Dated: 20th day of October 2017

Re: Julio Alvarez


Your Honor,

 I am writing this letter to refer to my husband Julio Alvarez and to expose our situation
throughout this legal process. I am Agustina Alvarez, his wife of 30 years and the mother
of his 3 children. Although, we have been together almost a lifetime and have lived
through numerous things, both good and bad, I must admit this process has been the most
difficult time in our lives. It has taken a great toll on our family, both financial and
emotional.  I believe that having known Julio for 30 years makes me well qualified to be
able to describe his character, not to mention his impeccable record as a citizen of the
United States, never has he been involved in any illegal act. He has been a very hard-
working and exemplary man with a one of the kindest hearts that can exist. Often, our
conflicts as a couple were as a result of his noble and somewhat naïve attitude. In his
continuous efforts of rescuing and helping others, he would end up becoming the victim,
and this was what I never liked, the fact that he never said "no" to anyone that would ask
for his help.

Furthermore, our lives were normal before this troubling business deal went completely
wrong. We had a peaceful life and decent financial status, but everything went spiraling
down after this event occurred and has forever marked our lives in the most crucial way
one can be affected as a human being. Although we lost everything, including our home,
the most vital thing we lost was our peace. Thus, we now live in uncertainty and torment.
My husband and I have been diagnosed with depression and are now dependent on
prescription medication to battle this illness that has no cure.  My husband does not sleep,
and although he has been pretending to be strong throughout this process, I have caught
him several times crying at night all alone like a lonely child. This situation is
unbearable, and I know that what maintains his will to live is the love he has for us, his
family. He is a loving father and the patriarch of our family, he is our leader and our
strength, and without him we are lost. We have never been separated and the mere
thought of imagining him in prison invades my soul with fear. He is so sweet and humble
that it terrorizes me to think he can be exposed to criminals who can be quite
intimidating. He is nothing like a criminal, and although my opinion may seem biased, I
can promise you that his soul is filled with goodness and love. This situation is only a
result of a business gone wrong, which he lost control of but it was with NO intention of
harm or wrong doing to anyone. He made a mistake that has cost all of us our peace of

mind, most importantly. These past years have been a lot to withstand, but our bond as a family is stronger than ever. We only wish for this nightmare to be over soon, in the best possible way. Never did we imagine having to endure a situation like this.

Thank you for your time. We know your decision must be impartial and abide to the written laws of this nation, and with all due respect we will humbly accept your decision in this case.

Sincerely,

Agustina Alvarez

**From:** gabriella alvarez
   **To:** jamesmbranden <jamesmbranden@aol.com>
**Subject:**
   **Date:** Sun, Oct 22, 2017 3:08 pm

---

Dear Judge Caproni,                                                             I'm writing you this letter to let
you know how i feel about the whole case. Although my father, Julio Alvarez pleaded guilty, I know deep down that he is a
good person. If he were to go to jail I don't know what i would do without him, the love that I have for my father is
unconditional. Due to what's going on, I've been slacking in school, my grades used to be A's and B's and now i have B's and
C's. Lately I haven't been trying as hard, everything seems difficult and too much to handle. My Father used to be one of the
happiest people I've known and now he's always stressed and tired, some days i wish i could help him but obviously me
being 14 there isn't much that I can do. Due to this case my mother has also been affected, she's always depressed and
also stressed. I know my father pleaded guilty, but please don't put him in jail, I've been with him all my life, and he's always
been there for me, sometimes I feel like he's the only one that truly understands me. Without him I don't know what I'd do.

Sincerely,

   Gabriella Alvarez